969 So.2d 1177 (2007)
CLAY COUNTY, Florida, Petitioner,
v.
KENDALE LAND DEVELOPMENT, INC., Respondent.
No. 1D07-2435.
District Court of Appeal of Florida, First District.
December 5, 2007.
*1178 Frances J. Moss, Mark H. Scruby and Rebecca L. Clayton, Green Cove Springs, for Petitioner.
E. Lanny Russell and E. Owen McCuller, Jr., of Smith Hulsey & Busey, Jacksonville, for Respondent.
WEBSTER, J.
By a petition for writ of certiorari, Clay County seeks review of a final order entered by the trial court. That order granted a petition for writ of certiorari filed by Kendale Land Development challenging an adverse decision by an administrative hearing officer of an appeal taken by Kendale from a determination by the County that a Concurrency Reservation Certificate (CRC) issued to Kendale by the County had expired. Because we conclude that the trial court's order constituted a departure from the essential requirements of law, we grant the petition, quash the trial court's order, and remand for further proceedings applying the correct law.

I.
The essential facts were stipulated to by the parties in both the administrative hearing and the trial court. Kendale is an experienced land developer. In 2004, it began planning a project to develop 124 single-family home lots in the County. On June 16, 2004, the County issued a CRC for the proposed subdivision. At that time, a CRC was defined in the County's Concurrency Management System ordinance as "the official document issued by the County upon finding that an application for the certificate in reference to a specific final development order or final development permit for a particular development will not result in the reduction of the adopted level of service standards for impacted potable water, sanitary sewer, parks and recreation, drainage, solid waste, transportation (roads) and mass transit facilities and services, as set forth in the [County's Comprehensive] Plan." In essence, a CRC carved out, or "reserved," approval for the development of certain areas of the County, in compliance with the Comprehensive Plan. The ordinance further provided that an agreement to pay a "fair share" of the cost of road improvements might "serve as the functional equivalent of a CRC" when a project was unable to meet the transportation concurrency requirements.
Another portion of the Concurrency Management System ordinance provided that "[a] CRC shall expire when any of the following conditions are met: . . . [f]or a single family development, the applicant fails to obtain approval of all preliminary plats within six (6) months of CRC issuance or fails to obtain approval of all final plats and final acceptance of all roads and drainage by the Board of County Commissioners within twenty-four (24) months of CRC issuance." Consistent with this clear language regarding expiration, the CRC issued to Kendale included the following:
A new CRC will be required in order to proceed with any portion of the project that does not obtain the following approval(s) by the stated deadline(s):
Obtain approval of all preliminary plats by December 16, 2004.
Obtain approval of all final plats and acceptance of all roads and drainage by the Board of County Commissioners by June 16, 2006.
Notwithstanding the language in the County's ordinance and the CRC, Kendale's principals concluded that they had an option to choose either of the deadlines, *1179 rather than being obliged to comply with both. Accordingly, they decided that they would meet only the June 16, 2006, deadline.
Kendale did not obtain approval of all preliminary plats by December 16, 2004. On January 18, 2005, a Kendale employee sent an e-mail to the County's Chief Planner. To the extent pertinent, the e-mail read: "We are finally going to be able to move forward on th[e] project. Is there anything we need to do on our concurrency since we should still be able to meet the final plat and acceptance deadline of 6/16/06?" A short time later, the Chief Planner responded, "Concurrency is okay. Regarding the site plan, unless it's a substantial change just submit for site plan approval."
In March 2005, Kendale acquired the property for the project. During the next three months, Kendale employed entities to perform surveying, plat and engineering services.
On September 28, 2005, Kendale's employee sent another e-mail to the County's Chief Planner. It read: "Th[e] project was to come before the DRC on 9/27/05. Could you tell me what, if anything, we need to do to keep our concurrency valid as we move forward through engineering?" The Chief Planner forwarded the e-mail to an assistant planner, who responded: "The concurrency expires on June 16, 2006 for the final plats and acceptance of all r[oa]ds and drainage. Are all preliminary plats done?" Kendale's employee replied: "We are just starting the preliminary plats at this time since we just received approval of our site plan last night." The assistant planner responded with the following: "Attached is the only certificate I see for this project and if you have not got your preliminary plats, then your concurrency has expired as of December 16, 2004." Kendale's employee then responded: "I think I'm confused about your process. . . . I'm used to renewing the concurrency every 90 days (Duval), so I wanted to make sure we were on track with you."
No Kendale representative subsequently took any action to determine the status of concurrency on the project. However, on January 9, 2006, Kendale wrote the County's Chief Planner requesting an extension of the CRC for six months beyond the June 16, 2006, deadline. The Chief Planner responded by e-mail on January 17. In that e-mail, the Chief Planner explained that, when she had told Kendale's employee on January 18, 2005, that "[c]oncurrency [wa]s okay," she had done so on the assumption that final plat acceptance was the only condition that had not already been met. However, because Kendale had not met the December 16, 2004, deadline for approval of all preliminary plats, the CRC had already expired when she had sent the earlier e-mail. The Chief Planner "apologize[d] for the confusion," but said that Kendale would have to reapply. Kendale did reapply a short time later, but its application was denied because of a lack of available concurrency. However, the County told Kendale that it could proceed with the project if Kendale paid a "fair share" assessment of $625,203 by May 26, 2006. Instead of paying the "fair share" assessment, Kendale filed a notice seeking an administrative appeal, contending that the County was estopped from denying the continued validity of the CRC or, alternatively, from requiring the payment of a "fair share" assessment to obtain a new CRC.
By the time of the administrative hearing, Kendale was arguing that (1) the CRC did not expire, for various reasons; (2) the County was estopped to deny the continued validity of the CRC, principally because of the January 18, 2005, e-mail from the County's Chief Planner in which she *1180 had said that "[c]oncurrency [wa]s okay"; (3) if the CRC did expire, the amount of the "fair share" assessment required to obtain a new CRC ought to be that which would have been required on the date of the Chief Planner's January 2005 misstatement, or only $190,414, rather than the $625,203 insisted on by the County; and (4) the County erroneously denied its renewed application. In a detailed and thoughtful order, the hearing officer rejected all of Kendale's arguments. Regarding the estoppel argument, the hearing officer noted that the Chief Planner's e-mail was not sent until after the CRC had expired. He found, further, that the CRC was permitted to expire solely as the result of negligence on the part of Kendale's principals and employees.
Kendale then sought review in the trial court, filing its petition for a writ of certiorari. In its petition, Kendale alleged that the hearing officer's decision had constituted a departure from the essential requirements of law because it erroneously (1) concluded that the portion of the Concurrency Management System ordinance addressing expiration of CRCs was clear and unambiguous; (2) "failed to properly apply the elements of equitable estoppel to the facts"; and (3) concluded that the hearing officer lacked the "authority . . . to grant, as a remedy, the fair share amount as of the date of the January 2005 misstatement, $190,414." The trial court ultimately concluded that the hearing officer's decision was contrary to the essential requirements of law because, even though the CRC had in fact expired, the hearing officer had erroneously concluded that Kendale had failed to establish a case for equitable estoppel. The trial court also concluded that, because the hearing officer had the authority to affirm the County's determination but require as a condition of affirmance that the County permit Kendale to pay a "fair share" assessment of $190,414, it, too, possessed that authority. Accordingly, the trial court "affirm[ed] the County's denial of concurrency upon the condition that Kendale be allowed to pay a fair share in the amount of $190,414. . . ." The County now seeks from us a writ of certiorari quashing the trial court's ruling.

II.
We begin with an exposition of the law regarding the scope of review in certiorari proceedings of quasi-judicial local agency action which, although it is well settled, nevertheless seems routinely to be misapplied. Circuit court review of such action, known as "first-tier" review, is limited to determinations whether (1) procedural due process was accorded in the administrative proceeding; (2) the essential requirements of law were observed in the administrative proceeding; and (3) the administrative findings and judgment are supported by competent substantial evidence. Broward County v. G.B.V. Int'l, Ltd., 787 So.2d 838, 843 (Fla.2001) (quoting from City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982)). Our scope of review, known as "second-tier" review, is even more limited. We determine only "whether the trial court (1) afforded due process and (2) observed the essential requirements of law." Randall v. Fla. Dep't of Law Enforcement, 791 So.2d 1238, 1240 (Fla. 1st DCA 2001) (citing Sheley v. Fla. Parole Comm'n, 703 So.2d 1202, 1206 (Fla. 1st DCA 1997) (criminal division en banc), approved, 720 So.2d 216 (Fla.1998)), approved sub nom. R.J.L. v. State, 887 So.2d 1268, 1281 (Fla.2004). A ruling constitutes a departure from "the essential requirements of law" when it amounts to "a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla.1983). When considering such a petition for writ of certiorari, a court has only *1181 two optionsit may either deny the petition or grant it, and quash the order at which the petition is directed. G.B.V. Int'l, 787 So.2d at 843-44 (citing cases). The court may not enter any judgment on the merits of the underlying controversy, or direct the lower tribunal to enter any particular order. Id. Assessing the trial court's order according to these well-established rules, we conclude that order constitutes a departure from the essential requirements of law, and that we are, therefore, obliged to quash it.

III.
As we have noted, one "clearly established principle of law" is that, on first-tier certiorari review, a circuit court is limited to determining whether the administrative findings and judgment are supported by competent substantial evidence. Whether the record also contains competent substantial evidence that would support some other result is irrelevant. E.g., Dusseau v. Metro. Dade County Bd. of County Comm'rs, 794 So.2d 1270, 1275 (Fla.2001) (quoting from Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1093 (Fla.2000)); G.B.V. Int'l, 787 So.2d at 845; Educ. Dev. Ctr., Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla.1989). Here, rather than merely determining whether the hearing officer's findings that Kendale did not reasonably rely on the January 2005 misstatement by the Chief Planner or any other act or omission of the County and his decision that Kendale had failed to prove entitlement to the defense of equitable estoppel were supported by competent substantial evidence, the trial court conducted an independent review of the record, concluding that competent substantial evidence supported a conclusion that the County was equitably estopped to deny Kendale a CRC. This constituted "a violation of a clearly established principle of law resulting in a miscarriage of justice" and, therefore, a departure from the essential requirements of law. G.B.V. Int'l, 787 So.2d at 845; Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1093 (Fla.2000).
We have also noted that another "clearly established principle of law" is that, when considering a petition for writ of certiorari, a court has only two optionsit may either deny the petition or grant it, and quash the order at which the petition is directed. G.B.V. Int'l, 787 So.2d at 843-44 (citing cases). The court may not enter any judgment on the merits of the underlying controversy, or direct the lower tribunal to enter any particular order. Id. Here, the trial court entered judgment on the merits, fashioning what it believed to be an equitable remedy. This, too, constituted "a violation of a clearly established principle of law resulting in a miscarriage of justice" and, therefore, a departure from the essential requirements of law. G.B.V. Int'l, 787 So.2d at 845; Fla. Power & Light Co., 761 So.2d at 1093.

IV.
Based on the foregoing analysis, we conclude that the trial court departed from the essential requirements of law when it granted Kendale's petition for writ of certiorari. As we have explained, the relief we may grant is limited to quashing the trial court's order, which we now do. We also remand the matter to the trial court for further proceedings applying the correct law.
PETITION FOR WRIT OF CERTIORARI GRANTED.
PADOVANO and POLSTON, JJ., concur.