IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-2471

STATE OF FLORIDA,
DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR
VEHICLES,

      Petitioner,

v.

JOSEPH P. WIGGINS,

      Respondent.

_____/

Opinion filed September 4, 2014.

Petition for Writ of Certiorari—Original Jurisdiction.

Kimberly A. Gibbs, Orlando, for Petitioner.

David M. Robbins and Susan Z. Cohen, Jacksonville, for Respondent.

MAKAR, J.

      The Department of Highway Safety and Motor Vehicles seeks review of a circuit court order overturning a hearing officer's administrative order, which had upheld the suspension of Joseph P. Wiggins's driver's license. The narrow but important issue presented is whether the circuit court, acting in its appellate capacity, erred by concluding that its independent review and assessment of events

on a video of the traffic stop trumped the hearing officer's factual findings, which were based on the arresting officer's testimony and report. We hold that it did and grant the petition for certiorari.

I.

In August 2011, Deputy J.C. Saunders initiated a traffic stop of Mr. Wiggins, who was driving his pickup truck down Blanding Boulevard, a main thoroughfare in Clay County, Florida. A camera mounted on the dashboard of the deputy's vehicle recorded the movement of Mr. Wiggins's vehicle from the time the deputy first observed it, while Mr. Wiggins pulled into a gas station parking lot, and for approximately twelve minutes thereafter.

During the stop, Deputy Saunders requested that Mr. Wiggins perform a field sobriety test, but he declined. Deputy Saunders then arrested Mr. Wiggins for DUI and transported him to the county jail where, again, Mr. Wiggins declined to submit to a sobriety test. Due to these refusals, the Department placed an administrative suspension on Mr. Wiggins's driver's license.

Mr. Wiggins requested a formal review hearing to demonstrate that probable cause did not exist for the stop of his vehicle. Deputy Saunders and Robert Burch, the breath test operator, testified at the hearing and the arrest and booking report was admitted in evidence. The video of the stop was entered in evidence and was a focus of a portion of the proceeding, which consisted primarily of Mr. Wiggins's

attorney examining Deputy Saunders. Throughout the examination, Deputy Sanders testified while referring to the video. The hearing officer controlled and played the DVD player, starting and stopping the video player as necessary to view the portions related to the deputy's testimony. During this examination, counsel for Mr. Wiggins only once specifically asked Deputy Saunders whether his written report was consistent with what appeared on the video. The deputy confirmed that his entire report as written was supported by the video, pointing out where the vehicle's movement and pattern corresponded to what he said in his report with a few limited exceptions. One was that when he first saw Mr. Wiggins's vehicle and became suspicious about its driving pattern, the vehicle was within his eyesight but beyond the capabilities of the camera to capture ("the video doesn't always show everything I can see as far as at a distance"). Another was when Deputy Saunders voluntarily pointed out (before counsel asked him to do so) that his report erred in one respect by saying that his police cruiser at one point changed lanes first when it was Mr. Wiggins's vehicle that did so. The final was when Deputy Saunders thought Mr. Wiggins put his hands on his truck as he exited to maintain balance, which Mr. Wiggins's counsel noted did not actually happen.

Based upon the testimony and evidentiary record that included the video, the hearing officer made the following findings of fact:

On August 19, 2011, at approximately 2:10 a.m. Deputy J. C. Saunders of the Clay County Sheriff's Office observed a vehicle

3

swerving within the lane, almost striking the right side curb on several occasions, and then braking erratically for no apparent reason. He also paced the vehicle and determined that it was traveling 30 MPH in a 45-MPH zone. Suspecting that the driver might be impaired, Deputy Saunders conducted a traffic stop. Deputy Saunders observed the driver, Mr. Joseph Bryant Wiggins, Sr., to have an extremely strong odor of an alcoholic beverage coming from his breath, bloodshot, glassy eyes, a flushed face, and his movements were slow and deliberate. Mr. Wiggins admitted to consuming a few drinks when asked about his alcohol consumption. Mr. Wiggins refused to submit to field sobriety exercises and was placed under arrest for DUI. Based on the foregoing, I find that the petitioner was placed under lawful arrest for DUI. At the Clay County Jail, the implied consent warning was read and Mr. Wiggins refused to submit to the breath test.

Based on these factual findings, the hearing officer held that probable cause existed to believe that Mr. Wiggins was driving under the influence; that Mr. Wiggins refused to submit to a urine, blood, or breath-alcohol test after being requested to do so; and that Mr. Wiggins was told that his refusal to submit to a sobriety test would result in suspension of his license. The administrative order thereby affirmed the suspension of Mr. Wiggins's driver's license.

Mr. Wiggins then filed a petition for certiorari in circuit court, seeking review of the hearing officer's order, claiming it departed from the essential requirements of law and was not supported by competent substantial evidence. Specifically, he argued that the arrest and booking report statements directly conflicted with events on the video of the traffic stop. The circuit court, after

4

independently reviewing the video, held that the administrative order was flawed because the video contradicted portions of the officer's testimony and report.

In reaching this conclusion, the trial court compared and contrasted some—but not all—of the information in the arrest/booking report with events on the video. For example, the report stated that "the vehicle was drifting and weaving in its own lane traveling at 30 mph in a 45 mph zone, the passenger side tires crossed over the fog line and nearly struck the raised curb before swerving back into the lane." The court disagreed with this characterization, finding that the "video clearly refutes this evidence; in the video the vehicle does not drift and weave within its own lane. Furthermore, the passenger side tires do no not cross over the fog line nor do they come close to striking the raised curb." The report also claimed that "after coming to flashing yellow lights at the intersection . . . [Mr. Wiggins] braked for no reason and then accelerate [sic]." Contrarily, the trial court found that the video showed Mr. Wiggins "did brake slightly when coming to the flashing yellow lights" but that he slowly accelerated after passing the lights, compared to the report, which stated he "braked for no reason and then accelerated." The court acknowledged that Mr. Wiggins momentarily braked, but disagreed that Mr. Wiggins swerved to the right and almost hit the curb as he passed through an intersection. Finally, the report claimed that Mr. Wiggins "drifted into a turn lane" and "[w]hile making a wide left turn he had to realign his truck as he straightened

5

out." Disagreeing once again, the trial court reviewed the video and concluded that Mr. Wiggins deliberately changed lanes and the turn into the intersection was normal.

The trial court conceded that Deputy Saunders's testimony coupled with the report supported the factual findings of the hearing officer. Nonetheless, it held that "this testimonial evidence is flatly contradict [sic] by the objective evidence on the videotape." It concluded that in "[v]iewing the entire record evidence, neither the testimony of Deputy Saunders nor the arrest and booking report constitutes competent substantial evidence on which the hearing officer could rely." Acknowledging that it could not reweigh the evidence or substitute its judgment for that of the hearing officer, it supported its approach by relying on Julian v. Julian, 188 So. 2d 896 (Fla. 2d DCA 1966), for the proposition that "where the evidence is objective and there is not a determination of credibility, the reviewing court is in the exact same position as the hearing officer." Apparently believing it was "in the exact same position as the hearing officer" as to the evidence, the trial court concluded that it "was unreasonable as a matter of law for the hearing officer to accept Deputy Saunders [sic] report and testimony after this evidence was shown to be erroneous and flatly contradicted by the objective images of the videotape." As a result, the trial court's order overturned the hearing officer's order and the administrative suspension of Mr. Wiggins's driver's license, as well.

## II.

Review of the circuit court's order entails second tier certiorari review, by which two limited questions are posed: whether the circuit court afforded procedural due process and applied the correct law. Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995); Dep't of High. Saf. & Motor Veh. v. Trimble, 821 So. 2d 1084, 1086 (Fla. 1st DCA 2002). This level of review is narrower than a circuit court's first tier certiorari review, which reviews an administrative agency's decision for three components: (1) whether procedural due process was accorded, (2) whether the essential requirements of law were observed, and (3) whether the factual findings are supported by competent substantial evidence. Educ. Dev. Ctr, Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So. 2d 106, 108 (Fla. 1989).

At issue in this case is only whether the circuit court applied the correct law. The Department argues it did not, pointing out that the trial court's only job was to determine whether the hearing officer's findings of fact were supported by competent substantial evidence as announced in Dusseau Metropolitan Dade County Board of County Commissioner, 794 So. 2d 1270, 1275-76 (Fla. 2001) and prior similar precedents. By conducting what amounted to a de novo review of the evidence and impermissibly reweighing of it, the circuit court departed from the well-established legal principle that it was without authority to do so. Mr. Wiggins

7

counters that the deputy's testimony and report upon which the hearing officer relied was not competent substantial evidence in light of the video. He argues that the trial court was entitled to conclude that the video objectively demonstrated that the report and the deputy's testimony were erroneous and thereby not competent substantial evidence; he asserts the trial court's methodology was not prohibited under any clearly established caselaw, including Dusseau, to which we now turn.

A. Dusseau as Clearly Established Law

Whether Dusseau is clearly established law applicable in this case requires an examination of what rule of law our supreme court established or reaffirmed.[1] In Dusseau, a Baptist congregation owned acreage in Miami-Dade County upon which it sought to build a large church. Over the objections of a nearby homeowner, the county commission approved the application after holding an evidentiary hearing on the matter at which evidence from both sides of the disputed matter was presented. 794 So. 2d at 1272. In its appellate capacity, the circuit court—after reviewing all the evidence submitted by both sides—reversed, finding no competent substantial evidence that the proposed church construction met the requisite criteria for a special exception; to the contrary, the circuit court held that

---

[1] See Dep't of High. Saf. & Motor Veh. v. Edenfield, 58 So. 3d 904, 906 (Fla. 1st DCA 2011) ("Clearly established law can be derived not only from case law dealing with the same issue of law, but also from an interpretation or application of a statute, a procedural rule, or a constitution provision.").

8

competent substantial evidence existed showing the church did *not* meet requisite criteria. Id.

On second tier certiorari review, the Third District made two rulings. First, it held that the "circuit court departed from the essential requirements of law when it reweighed evidence and completely ignored evidence that supports the Commission's ruling." Id. at 1275. Second, it said that its own "review of the evidence clearly demonstrates that the Commission's ruling was supported by competent substantial evidence[.]" Id.

The supreme court, after reviewing principles of first and second tier certiorari, upheld the district court's first ruling but reversed its second (the latter because it is not a district court's job to review the record and make its own merits ruling). As to the first ruling, the supreme court affirmed as "proper" the district court's conclusion that the trial court "departed from the essential requirements of law when it reweighed evidence and completely ignored evidence" supporting the Commission's ruling. Id. Setting the tone that nomenclature does not matter, it began by noting that "[a]lthough the circuit court phrased its reversal in terms of 'competent substantial evidence,' the plain language of its order shows that the court in fact reweighed the evidence, at length." Id. It is not the label a circuit court uses to describe its analysis that matters; instead, it is whether the circuit court applied the established and limited methodology of looking only for whether

9

competent substantial evidence existed in support of the challenged administrative decision. The supreme court described the circuit court's erroneous approach as follows:

> Instead of simply reviewing the Commission's decision to determine whether it was *supported* by competent substantial evidence, the court also reviewed the decision to determine whether it was *opposed* by competent substantial evidence. The circuit court then substituted its judgment for that of the Commission as to the relative weight of the conflicting evidence. The circuit court thus usurped the fact-finding authority of the agency.

Id. Given the circuit court's improper approach to evaluating the record evidence, the supreme court sided with the district court, holding that it was a departure from the essential requirements of law—and an application of the "wrong law"—for the circuit court to review and reweigh the evidence, essentially deciding "anew the merits" of the case. Id. As the supreme court explained, the circuit court applied the "wrong law" by engaging in the type of evidence review/fact-finding that is to be done by an agency or administrative hearing officer (the so-called Irvine[2] standard); instead, the circuit court was to engage in the far more limited approach on first tier review, which is a search of the record for the *existence* of competent substantial evidence in support of the decision.

---

[2] See Dusseau, 794 So. 2d at 1273 (discussing Irvine v. Duval Cnty. Planning Comm'n, 495 So. 2d 167 (Fla. 1986)).

This clearly established legal principle in <u>Dusseau</u>—that a circuit court applies the "wrong" or "incorrect" law when it reweighs or reevaluates conflicting evidence and decides the merits of the underlying dispute anew—was previously well-established. As the supreme court pointed out in <u>Dusseau</u>, its previous precedents had announced such a rule. <u>See</u> 794 So. 2d at 1273-75 (discussing <u>Florida Power & Light Co. v. City of Dania</u>, 761 So. 2d 1089 (Fla. 2000) and <u>City of Deerfield Beach v. Vaillant</u>, 419 So. 2d 624 (Fla. 1982)). Indeed, the court explained as follows:

> Under <u>Vaillant</u>, the district court was required to determine whether the circuit court applied the correct law. As noted above, according to the plain language of its order, the circuit court reweighed the evidence and decided anew the merits of the special exception application. *The circuit court thus applied the wrong law* (i.e., instead of applying the <u>Vaillant</u> standard of review, the court reapplied the <u>Irvine</u> standard of proof), and this is tantamount to departing from the essential requirements of law (as the district court ruled).

794 So. 2d at 1275 (quoting <u>Florida Power & Light</u>, 761 So. 2d at 1093) (emphasis added)). In light of the many commanding precedents on this point of law, this Court cited <u>Dusseau</u> for the following statement:

> [O]ne 'clearly established principle of law' is that, on first-tier certiorari review, a circuit court is limited to determining whether the administrative findings and judgment are supported by competent substantial evidence. Whether the record also contains competent substantial evidence that would support some other result is irrelevant.

11

Clay Cnty. v. Kendale Land Dev., Inc., 969 So. 2d 1177, 1181 (Fla. 1st DCA 2007). We now turn to whether the circuit court's approach in this case conformed to these clearly-established principles in Dusseau and like precedents.

B. Applying Dusseau to This Case

As Dusseau explained, a circuit court is only permitted to determine whether an agency's decision was *supported* by competent substantial evidence. 794 So. 2d at 1275 ("the court should review the record to determine simply whether the Commission's decision is *supported* by competent substantial evidence."). Stated differently, this limited review boils down to a single-focused inquiry:

> The sole issue before the court on first-tier certiorari review is whether the agency's decision is lawful. The court's task vis-a-vis the third prong of Vaillant is simple: The court must review the record to assess the evidentiary support for the agency's decision. *Evidence contrary to the agency's decision is outside the scope of the inquiry at this point, for the reviewing court above all cannot reweigh the "pros and cons" of conflicting evidence. While contrary evidence may be relevant to the wisdom of the decision, it is irrelevant to the lawfulness of the decision. As long as the record contains competent substantial evidence to support the agency's decision, the decision is presumed lawful and the court's job is ended.*

Id. at 1276 (emphasis added). The emphasized language—as applied to this case—shows how the circuit court went beyond the specific analytical parameters of Dusseau and its progeny, thereby applying the incorrect law.

The circuit court—in reaching its ultimate legal judgment—focused exclusively on the video, which both Wiggins and the court deemed to be

12

"evidence contrary to the agency's decision." That was error. The sole starting (and ending) point is a search of the record for competent substantial evidence *supporting* the decision. The proper approach is narrow here, focusing on whether the officer's testimony, the arresting/booking report, or the video—*or portions thereof*—support the hearing officer's factual findings. See City of Jacksonville Beach v. Car Spa, Inc., 772 So. 2d 630, 631-32 (Fla. 1st DCA 2000) ("[I]t is clear that . . . rather than reviewing the entire record to determine whether the Planning Commission's decision was supported by competent substantial evidence, the circuit court considered only portions of the record, and reweighed the evidence, substituting its judgment for that of the Planning Commission as to the relative weight of that evidence."). The existence of inconsistencies or contradictions in the overall evidentiary record does not negate a hearing officer's findings; an evidentiary record need not have one-sided purity to prevail. Id. Besides that, putting contrary evidence on the judicial scales is "outside the scope of the inquiry" at the circuit court level and amounts to a pros/cons approach that Dusseau prohibits.

Within its analysis, the trial court tacitly conducted the type of review envisioned by Dusseau because it explicitly said that "[s]tanding alone, the arrest and booking report and the testimony by Deputy Sander would support the findings of the hearing officer." Its inquiry at that point—as explained in

13

Dusseau—was thereby "ended." 794 So. 2d at 1276. Whatever misgivings it may have had about possible conflicts between the video and the officer's testimony/report were "outside the scope of the inquiry" as Dusseau holds. If portions of the report, or portions of the officer's testimony, or portions of the video, or some combination of the three, provided evidentiary support for the hearing officer's findings, judicial labor was at its end.

Beyond the clarity of Dusseau and its progeny on this legal point, good policy reasons support the narrowing of the scope of certiorari review of administrative factual findings. One is that appellate litigants are not entitled to duplicative plenary review of factual findings as the appellate ladder is traversed. Instead, litigants get one opportunity to make an evidentiary record and to persuade the fact-finder to one of their competing views of the evidence; they cannot appeal to a circuit court and obtain such detailed review again. In this regard, it is noteworthy that the circuit court conducted—in large part—essentially the same type of review done by the hearing officer (with several important limitations discussed below). By comparing the video to the officer's report, and making judgments about whether they were sufficiently in lockstep with each other, the circuit court repeated almost the exact same exercise that the hearing officer had already performed in the hearing room. But circuit courts are not to do so; doing so

would impermissibly provide the "second bite at the apple" that first tier certiorari review precludes.

A second policy point is one of deference to the administrative hearing officer, who heard the live testimony, saw the video firsthand interactively with the officer's testimony, and is experienced on licensure suspension matters. The supreme court made this point in Dusseau, reiterating that "the 'competent substantial evidence' standard cannot be used by a reviewing court as a mechanism for exerting covert control over the policy determinations *and factual findings* of the local agency." Dusseau, 794 So. 2d at 1275-76 (emphasis added). Instead, the "standard requires the reviewing court to defer to the agency's superior technical expertise *and special vantage point* in such matters." Id. at 1276 (emphasis added). The two highlighted passages underscore that a primary principle of Dusseau is first tier deference to (rather than "control over") administrative factual findings because of the hearing officer's "special vantage point" in the process; Dusseau cannot be dismissed as merely an "agency expertise" case.

For like reasons, important limitations undercut the circuit court's re-review of the evidentiary record. As just mentioned, the hearing officer heard firsthand from the officer, who was questioned about and explained alleged inconsistencies between the video and the report; the circuit court had no contextual explanation upon which to rely other than the transcript of the officer's testimony, which

15

concededly supports the hearing officer's findings. Unlike the circuit court, the hearing officer could evaluate the credibility of the officer and make a determination, for example, that he was truthful in his explanation of what he saw, and what his report said, regarding the vehicle's driving pattern.[3] While the video alone might appear as thin evidence for the stop, when viewed in conjunction with the officer's testimony, if believed, the evidence as a whole explains why the officer was led to believe the vehicle's driver might be impaired (impairment being a multi-factored judgment call). For this reason, the circuit court's belief that the "hearing officer was in no better position to evaluate the probative value of [the video] than is this Court" was mistaken; the hearing officer was in a far better position to evaluate the overall evidence, the "special vantage point" emphasized in Dusseau.

Another limitation is that the circuit court concluded that the video nullified the officer's testimony and the report *in their entirety*. This too was mistaken. By concluding it "was unreasonable as a matter of law for the hearing officer to accept Deputy Sanders report and testimony" in their entirety, the circuit court failed to follow Dusseau, which requires culling through the record for whatever bits and

---

[3] An example is that the circuit court erroneously relied upon a portion of the report dealing with a lane change that the officer on his own accord had voluntarily admitted was an error. The hearing officer—who actually heard the officer make this correction—was in the superior position to pass judgment on this factual point; indeed, it made no finding of fact on the lane change issue, it playing no role in the hearing officer's order.

pieces of evidence that support an administrative order's factual findings. Here, that meant separating out those portions of the officer's testimony, his report and the video itself that are supportive of the hearing officer's findings, leaving contrary or inconsistent evidence on the cutting room floor. Viewed in this light, the video—consistent with relevant portions of the testimony and report—shows the vehicle appeared to weave somewhat, slowed to 30 mph in a 45 mph zone, and braked within an intersection for no apparent reason—all at 2:10 am. The officer also testified that his initial observation of the vehicle's driving pattern, from a distance the video was unable to capture fully, caught his attention by appearing to swerve and flash its taillights in an odd way. This evidence, which the circuit court otherwise deemed competent and substantial, cannot be ignored simply because the circuit court disagreed with portions of testimony and report that it deemed conflicted with the video.

A final, but related, policy point is that circuit courts are required to put aside their factual correctness meters, as difficult as that may be. As the supreme court in Dusseau said, the issue to be decided "is not whether the agency's decision is the 'best' decision or the 'right' decision or even a 'wise' decision" under the circumstances. Id. at 1276. It can be a difficult task to review a factually-close case and yield to a deferential appellate standard of review, particularly where a video exists that may paint a visually divergent picture from the report or memory of a

testifying official. Judges reviewing the video, along with the report and the hearing transcript, are likely to make differing judgments; just as hearing officers seeing the video, reading the report, and hearing the testimony of the actual officer might come away with different conclusions in this case. The legal point is that in factually-close cases, such as this one, the judicial thinking cap must be switched from "What do I believe is true?" to "What evidence supports what the hearing officer believes is true?"

Appellate second-guessing of the fact-finder's judgment goes against the legally-required deference that promotes judicial economy and finality, which are lost if circuit courts can utilize videos as a means to negate all other record evidence. As the United States Supreme Court has noted, the "[d]uplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574-75 (1985) ("[T]he parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.").

Of course, instances may exist where video evidence can operate to contradict all other evidence on a discrete factual point (versus an overall

18

assessment of the evidence). A video that unmistakably shows a vehicle running a red light can nullify testimony and reports to the contrary. But the quality and context of a video, like that in this case, may not capture or explain the finer nuances that the human eye of a trained (though here relatively inexperienced) DUI officer may perceive. Which explains why the officer said he picked up on some unusual movement of the vehicle or its taillights at a distance ("a good ways back at that point") that the camera could not fully capture because the "video isn't always the best." What the officer believed he saw, unless entirely inconsistent with the video, is to be credited. The officer's eyes were multi-tasking: watching the road to safely operate the patrol car while intermittently observing the vehicle's driving pattern. He may have believed the vehicle hit the fog line at the time, but upon review of the video the vehicle did not drift quite that far—but it drifted nonetheless. These types of contextual inconsistencies between the video and the officer's testimony/report are lost by crediting the video to the exclusion of the record as a whole.

Yet videos are increasingly becoming a part of the appellate record, raising issues about the degree of deference to be given factual findings in different contexts. Some commentators argue for less deference—and greater appellate authority to rely on video evidence—where the interest at stake, such as a criminal sentence of death or life imprisonment, hangs in the balance.

> In most garden-variety appeals . . . deference by a reviewing court to trial court determinations may be justified by policy values other than necessity, such as finality and judicial economy. No technological advance is likely to endanger traditional standards of review in that context. In less than routine cases, however, such as when a defendant's life is at stake, videotaped records may provide some opportunity for much-needed improvement in appellate oversight of state court proceedings.

Robert C. Owen & Melissa Mather, Thawing Out the "Cold Record": Some Thoughts on How Videotaped Records May Affect Traditional Standards of Deference on Direct and Collateral Review, 2 J. App. Prac. & Process 411, 433 (2000). Others pragmatically urge for incremental change, allowing broader appellate reliance on videos establishing insular facts that need little contextual explanation, but generally defaulting to existing standards of review because many facts—such as a person's mental state—require more complex initial assessments of evidence.

> Discrete questions of fact, often binary in nature, are usually simple and rarely conflict with an explicit finding of the trial judge; they are thus proper candidates for video review. Questions requiring behavioral interpretation are marked by the interpretation of behavior in the courtroom; the category includes credibility but extends also to situations that similarly implicate the interests of deference, finality, efficiency, and the superiority of actual courtroom presence. Such complex questions should remain outside the purview of appellate review. The video record may "speak for itself," but it does not and cannot speak for the visual input a judge observes and interprets that falls outside the scope of the camera, nor does it filter events and behavior through his or her experience and expertise. This fundamental reasoning behind deference should form the backbone of a theoretical framework for integrating the video record into American jurisprudence.

20

Bernadette Mary Donovan, Deference in A Digital Age: The Video Record and Appellate Review, 96 Va. L. Rev. 643, 676 (2010). We need not resolve the extent to which an appellate court may point to video evidence in overturning a lower tribunal's factual findings. In the context of this case, we need only conclude that the trial court applied the "wrong law" by not sifting through the record for evidence supporting the administrative order's factual findings.

## C. Trimble is Inapplicable

Our review is not complete without consideration of this Court's decision in Trimble, which Mr. Wiggins says allowed the circuit court to reject entirely the officer's testimony and report. His theory is that the circuit court at worst misapplied Trimble, a case he claims is "correct law" in the context of this case. See Edenfield, 58 So. 3d at 906 ("[A] misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law.") (internal citations and quotations omitted).

The trial court, however, did not rely upon or even mention Trimble. Instead, it anchored its legal ruling—that an appellate court is in the "exact same position" as a hearing officer in reviewing "objective" evidence involving no credibility determinations—on the Second District's fifty-year-old decision in Julian v. Julian, 188 So. 2d 896 (Fla. 2d DCA 1966). But the context and holding of Julian are of no relevance here. Julian was a child custody case in which the trial

court was presented with only a paper record consisting of pleadings, transcripts, and exhibits; no live witnesses testified and no video evidence was offered. In that evidentiary context, the Second District said:

> It is our view that, as the case comes here, there is no presumption, or at best, only a slight presumption, in favor of the correctness of the custody provision. *Where a trial Judge bases his Final Decree upon the written pleadings and transcribed testimony and exhibits, the Appellate Court is in the same position in examining the record as is the Trial Judge, and a presumption as to determination of evidentiary matters in not as strong as when the Judge, as the trier of the facts, personally hears the witnesses*.

Id. at 898 (emphasis supplied). The italicized portions demonstrate how far afield Julian is from this case. First, the hearing officer in Mr. Wiggins's case did not base her findings on an entirely paper record, as occurred in Julian; she heard live testimony and was in a position to make credibility determinations; and no video was involved in Julian. Second, the court in Julian abandoned the notion that an appellate court is "in the same position" as the trial court in situations where that court "personally hears the witnesses." Whatever presumption of correctness applied to trial courts' rulings on paper-only records was deemed "not as strong" when a trial court "personally hears the witnesses." On its face, Julian simply has no application here. It follows that the application of an irrelevant case, such as Julian, is the application of the "wrong law"—not a misapplication of the correct law.

22

Because the trial court applied the "wrong law" in making its ruling, no need exists to delve further into the metaphysical question of what law it might have applied. Dusseau, 794 So. 2d at 1276 ("As long as the record contains competent substantial evidence to support the agency's decision, the decision is presumed lawful and the court's job is ended."). Nonetheless, we address Trimble to point out that its context and narrow holding likewise make it an inapplicable precedent. One year after Dusseau was decided, this Court in Trimble reviewed the Department's administrative suspension of Ms. Trimble's Florida driver's license for refusing to submit to a sobriety test. 821 So. 2d at 1085. A formal administrative hearing was held, her suspension was upheld, and she petitioned the circuit court, which set aside the suspension. The circuit court found no competent substantial evidence that Ms. Trimble was given an implied consent warning *prior* to her refusal because the Department's documents[4] "were hopelessly in conflict and the discrepancies on the critical facts went unexplained." Id. at 1086. As in Julian, the contested factual issue was based solely on a paper-only record.

The Department sought second tier review, arguing the circuit court reweighed the evidence. Id. at 1085. This Court affirmed, holding that the circuit

---

[4] The Department submitted an affidavit stating that Trimble was arrested at 11:40 p.m. but inconsistently stating that a request and warning was given to Trimble at 12:45 a.m.; a printout from the Breathalyzer that reflected a refusal occurred at 12:47 a.m.; and an officer's report said a warning was given at 12:50 a.m. 821 So. 2d at 1086.

court did not reweigh the evidence; instead, it applied well-established law on what constitutes competent substantial evidence, stating the "hearing officer's finding that Trimble was given a consent warning before her refusal could have rested as much on the flip of a coin as on the documentary evidence submitted." Id. The petition was denied on that limited basis.

If this case involved a wholly paper record, consisting of a handful of documents that were "hopelessly" conflicting on a single discrete fact—with no other evidence supportive of the hearing officer's order—then Trimble could apply. It does not, however. Unlike the paper-only coin-flipping conundrum in Trimble,[5] the evidentiary profile in Mr. Wiggins's case is entirely different—live testimony of the arresting officer, an arrest/booking report, and the video—making Trimble inapplicable. No commonality or parallelism exists. Like Julian, Trimble falls in "wrong law" category.

What underlies much of the confusion is differentiating between a misapplication of the "correct law" and the application of the "wrong law." As two commentators have noted, "in many cases only a Zen master could distinguish between a misapplication of the law and an application of the wrong law," making

---

[5] See also Dep't of High. Saf. & Motor Veh. v. Colling, 39 Fla. L. Weekly D1195 (Fla. 5th DCA June 6, 2014) (hearing officer's decision between two documents with inconsistent blood alcohol readings "amounted to nothing more than a 'flip of a coin' under the most favorable interpretation of the record" rendering it an "arbitrary choice of one document over another [that] does not meet the substantial, competent evidence test.") (citing Trimble).

24

the task much like telling identical twins apart. Chris W. Altenbernd & Jamie Marcario, <u>Certiorari Review of Nonfinal Orders: Does One Size Really Fit All? Part I</u>, Fla. B.J., Feb. 2012, at 23. In a universal sense, *any* case could be dubbed the "correct law" so long as it has not been overturned. But to be considered "correct law" for purposes of certiorari review, a precedent must be "relevant law" in the sense that it directly pertains to some issue in the case at hand. If not, a circuit court could simply apply an irrelevant case and thereby immunize its ruling from review as a "misapplication" of *a* "correct law." For this reason, *the* "correct law" for purposes of second tier certiorari review must, at a minimum, at least have a direct and relevant application to the issue at hand. Viewed in this way, even if the trial court had cited to <u>Trimble</u> and attempted to apply it as a basis for its ruling, doing so would not insulate its ruling from certiorari review as a "misapplication of correct law."

### D. "Miscarriage of Justice"

Not applying the correct law must also result in a "miscarriage of justice" as the supreme court has explained.

> In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this

discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.

Combs v. State, 436 So. 2d 93, 95-96 (Fla. 1983). Expanding upon Combs, the court noted that the standard of second tier certiorari "while narrow, also contains a degree of flexibility and discretion. For example, a reviewing court is drawing new lines and setting judicial policy as it individually determines those errors sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari. This may not always be easy since the errors in question must be viewed in the context of the individual case." Haines City Cmty. Dev., 658 So. 2d at 530-31 (footnote omitted).

Based upon these principles, which require not only a "sufficiently egregious error or fundamental" error but also a restrained exercise of judicial discretion, we conclude that the context of this case warrants relief. Failing to apply the applicable standard of certiorari review, while perhaps understandable in light of the circuit court's view of the primacy of the video, meets this standard. See Clay County, 969 So. 2d at 1181. And although this case involves only Mr. Wiggins's suspension, the Department says that many similar cases currently exist; and if the circuit court's method of review is permitted, that the proverbial floodgates will open by giving the green light to circuit courts to independently review and second-guess the evidentiary weight to be placed on video evidence. Under these

26

circumstances, where no relief is otherwise available to the Department to curtail this practice, the context of this case warrants relief.

III.

The circuit court did not comply with <u>Dusseau</u>, which sets out the clearly-established manner in which first tier certiorari review is conducted in determining whether competent substantial evidence exists in support of an administrative fact-finding. In light of the circuit court's order, which says the officer's testimony and arrest/booking report by themselves would support the hearing officer's factual findings, it might seem that a reversal is in order. But <u>Dusseau</u> says that a district court should not independently review the record and pass upon whether competent substantial evidence exists in support of a challenged administrative order; that is for the circuit court to do. As such, we grant the petition, quash the circuit court's order, and remand with directions to apply the correct law. Because the issue presented arises more frequently due to the ubiquity of video evidence, we certify the following question of great public importance for possible review:

> WHETHER A CIRCUIT COURT FAILS TO APPLY THE CORRECT LAW BY REJECTING AS NON-CREDIBLE THE ENTIRETY OF AN ARRESTING OFFICER'S TESTIMONY AND REPORT CONCERNING A TRAFFIC STOP, UPON WHICH THE HEARING OFFICER'S FACTUAL FINDINGS RELIED, BASED SOLELY ON THE CIRCUIT COURT'S OWN INDEPENDENT REVIEW AND ASSESSMENT OF EVENTS ON THE VIDEO OF A TRAFFIC STOP?

PETITION GRANTED.

LEWIS, C.J., CONCURS. VAN NORTWICK, J., DISSENTS.

VAN NORTWICK, J., dissenting.

It is clear from this record that the circuit court's order did not improperly reweigh the record evidence but, rather, it ruled on the credibility of the evidence in the record in determining whether the hearing officer relied on competent substantial evidence. Thus, the circuit court did not apply the incorrect law.[6] As a result, I would deny the petition and respectfully dissent. I concur in the certified question.

Factual and Procedural Background

As described by the majority, Wiggins was arrested for DUI and refused the arresting law enforcement officer's request to submit to breath-alcohol testing. After the placement of an administrative refusal suspension on Wiggins' driver's license, Wiggins requested and was granted a formal administrative suspension review hearing. At the hearing, Wiggins placed into evidence a DVD recording which was viewed at the hearing and showed the entire period from when he was first observed by Deputy Saunders through the arrest. At the conclusion of the evidentiary portion of the review hearing, Wiggins' counsel argued that both the stop of the vehicle and the DUI arrest were unlawful. Based on the record documents and the testimony offered in the review hearing, the hearing officer

---

[6] There is no argument that the circuit court denied procedural due process.

made certain factual findings, and based on these factual findings, the hearing officer determined that a preponderance of the record evidence supported an affirmance of the administrative suspension pursuant to section 322.2615(8)(a), Florida Statutes. Wiggins' motions to invalidate the administrative suspension were denied.

Wiggins then filed a petition for writ of certiorari in the circuit court of the Fourth Judicial Circuit. In the petition, Wiggins argued, as he had at the administrative review hearing, that the stop and arrest were unlawful and that there was no competent substantial evidence to support the hearing officer's findings that the stop and arrest were lawful. The Department asserted, in response, that there was competent substantial evidence in the record to support the hearing officer's findings as made in the order and that, pursuant to section 322.2615(13), the circuit court was not permitted to conduct a *de novo* review of the issues from the administrative hearing. The circuit court granted Wiggins' petition and found that the record failed to contain competent substantial evidence to support the lawfulness of the stop. The circuit court explained its ruling, as follows:

> According to the arrest and booking report "the vehicle was drifting and weaving in its own lane traveling at 30 mph in a 45 mph zone, the passenger side tires crossed over the fog line and nearly struck the raised curb before swerving back into the lane." The video clearly refutes this evidence; in the video the vehicle does not drift and weave within its own lane. Furthermore, the passenger

29

side tires do not cross over the fog line nor do they come close to striking the raised curb.

The arrest and booking report further states "after coming to the flashing yellow lights at the intersection of Long Bag Road and Blanding Boulevard, the Petitioner braked for no reason and then accelerate. (sic)" The Petitioner did brake slightly when coming to the flashing yellow lights and subsequent to passing the flashing yellow lights slowly accelerated. The arrest and booking report then describes the vehicle as "braking hard again and swerved right as he entered the intersection with Everett Avenue." The Petitioner did slightly apply the brakes momentarily. However Petitioner did not swerve to the right and almost hit the curb as he was passing through the intersection with Everett Avenue.

The arrest and booking report further describes the driving pattern as "continued south on Blanding Boulevard toward County Road 218 and drifted into the turn lane. While making a wide left turn he had to realign his truck as he straightened out." This evidence is refuted by the video that shows that the petitioner (sic) did continue driving southbound on Blanding Boulevard. However, the Petitioner deliberately switched lanes into the left turn lane as opposed to drifting. The turn upon leaving the intersection was normal and did not result in the Petitioner having to straighten out the vehicle to complete the turn.

Standing alone, the arrest and booking report and testimony by Deputy Saunders would support the findings of the hearing officer. However, this testimonial evidence is flatly contradicted by the objective evidence on the videotape. The images on the videotape are clear and contain adequate lighting. The hearing officer was in no better position to evaluate the probative value of this objective evidence than is this court. Viewing the entire record evidence, neither the testimony of Deputy Saunders nor the arrest and booking report constitutes

30

competent substantial evidence on which the hearing officer could rely. In De Groot v. Sheffield, 95 So. 2d 912, 916 (Fla. 1957), the court described competent substantial evidence as that "sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the 'substantial' evidence should also be 'competent.'"

It was unreasonable as a matter of law for the hearing officer to accept Deputy Saunders report and testimony after this evidence was shown to be erroneous and flatly contradicted by the objective images of the videotape.

Accordingly, the circuit court granted the petition for a writ of certiorari and quashed the Department's order. The Department seeks review of this order by petition for writ of certiorari. As noted, I would deny the petition.

<u>Standard of Review</u>

In considering a petition for writ of certiorari on second-tier review of a circuit court's order reviewing an administrative order, the various standards of review are a necessary starting point in the analysis. In certiorari proceedings concerning an administrative action, the circuit court is required to apply a three-pronged analysis and determine (1) whether procedural due process was accorded, (2) whether the essential requirements of law have been observed, and (3) whether the administrative findings and judgment are supported by competent substantial evidence. Haines City Cmty Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995); Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So. 2d

31

106, 108 (Fla. 1989). When exercising its certiorari review power, the circuit court is not permitted to reweigh the evidence or substitute its judgment for that of the agency. Educ. Dev. Ctr., 541 So. 2d at 108.

The standard of review applicable to the district court of appeal reviewing the circuit court's order is more restricted. While engaged in a so-called second-tier review, the appellate court is limited to a two-pronged analysis determining (1) whether the circuit court afforded procedural due process, and (2) whether the circuit court applied the correct law. Heggs, 658 So. 2d at 530 (holding that the administrative phrase "applied the correct law" is synonymous with the civil and criminal phrase "observing the essential requirements of law" and, therefore, there is "no justifiable reason for adopting different standards for district court review in such cases"); Educ. Dev. Ctr., 541 So. 2d at 108; Dep't of Highway Safety & Motor Vehicles v. Edenfield, 58 So. 3d 904, 906 (Fla. 1st DCA 2011). Pursuant to Florida Rule of Appellate Procedure 9.030(b)(2)(B), this second-tier review is necessarily narrower than the circuit court's review. Educ. Dev. Ctr., 541 So. 2d at 108. This court, unlike the circuit court, may not review the record to determine whether the Department's decision was supported by competent substantial evidence, see Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So. 2d 1270, 1274 (Fla. 2001), because second-tier certiorari is not a means of granting a second appeal. Further, the district court cannot grant

32

certiorari relief simply because it disagrees with the outcome of the circuit court's decision. Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 726 (Fla. 2012). As will be seen from the discussion which follows, the majority misunderstands this court's responsibility in determining whether the circuit court "applied the correct law."

With respect to determining whether the circuit court applied the correct law, the district court should grant second-tier certiorari relief "only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (emphasis added). This court has emphasized the limited nature of this review:

> Clearly established law can be derived not only from case law dealing with the same issue of law, but also from an interpretation or application of a statute, a procedural rule, or a constitution provision. When the established law provides no controlling precedent, however, certiorari relief cannot be granted because without such controlling precedent, a district court cannot conclude that a circuit court violated a clearly establish principle of law. Further, a misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law.

Dep't of Highway Safety & Motor Vehicles v. Edenfield, 58 So. 3d at 906 (internal citations and quotations omitted).

Application of the Correct Law

33

Relying on Dusseau, the Department argues and the majority agrees that the circuit court did not apply the correct law because it reweighed the evidence and substituted its judgment for that of the hearing officer's. In Dusseau, the Florida Supreme Court discussed the applicable case law which governs first- and second-tier reviews. The Supreme Court differentiated between a "competent substantial evidence" standard of proof, which is applied by the government agency in the first instance, and a "competent substantial evidence" standard of review, which is applied by the circuit court upon its first-tier review. 794 So. 2d at 1274. The Dusseau court explained that, when the circuit court *reweighs* the evidence and decides the merits of an agency order, the circuit court applies the wrong law because it applies the competent substantial evidence standard of proof rather than the competent substantial evidence standard of review. Id. at 1275 (citing Florida Power & Light Co. v. City of Dania, 761 So. 2d 1089 (Fla. 2000)). The court further explained in Dusseau that

> [t]he sole issue before the court on first-tier certiorari review is whether the agency's decision is lawful. The court's task vis-à-vis the third prong of [City of Deerfield Beach v. Vaillant, 419 So. 2d 624 (Fla. 1982)] is simple: The court must review the record to assess the evidentiary support for the agency's decision. Evidence contrary to the agency's decision is outside the scope of the inquiry at this point, for the reviewing court above all cannot reweigh the "pros and cons" of conflicting evidence. While contrary evidence may be relevant to the wisdom of the decision, it is irrelevant to the

34

lawfulness of the decision.

Id. at 1276.

Dusseau did not put forth a new understanding of the competent substantial evidence standard of review. That is, in describing first-tier review, the Dusseau court does not require, as the majority states, that reviewing the record in support of the findings of fact involves "culling through the record for whatever bits and pieces of evidence that support an administrative order's factual findings" while "separating out those portions [of a matter of record] that are supportive of the hearing officer's findings, leaving contrary or inconsistent evidence on the cutting room floor." Majority op. at 16-17. Instead, an item of evidence can be rejected as a whole by the circuit court on first-tier review because it is not legally competent evidence, even though a sentence or phrase within that item might support a finding of fact. Courts employing a competent substantial evidence standard of review, as this court routinely does, are not obliged to disassemble or deconstruct matters submitted into evidence. To so construe the competent substantial evidence standard would essentially render it a meaningless standard, for certainly there is almost always some passing phrase or minor reference in the record evidence which could be seen as support for a finding of fact, even when an item of evidence, when viewed in context as a whole, plainly does not support a finding of fact.

For instance, <u>Dusseau</u> nowhere requires a circuit court on first-tier review to find support for a finding of fact on a single sentence in a document when that document as a whole plainly does not support the finding. To my mind, that is what the majority is here insisting upon: that a circuit court accept parts of a discrete item of record while ignoring that item as a whole. Indeed, the majority says as much when it holds that the circuit court must have found support for a finding of fact made by the hearing officer if "portions of the report, or portions of the officer's testimony, or portions of the video, or some combination of the three, provided evidentiary support for the hearing officer's findings. . . ." Majority op. at 14. <u>Dusseau</u> says no such thing. To mandate a Chinese menu approach to the competent substantial evidence determination in first-tier review will lead to absurd results. Therefore, in my view, the majority reads <u>Dusseau</u> too broadly.

It is certainly true that a reviewing court on first-tier review may not *reweigh* the competent evidence already weighed by the finder of fact. <u>Dusseau</u>, 794 So. 2d at 1273-74. However, as noted, a court on first-tier review is charged with determining whether findings of fact and the resulting judgment are supported by competent substantial evidence, which means the court of first-tier review is to determine whether there is "legally sufficient evidence." <u>Id.</u> at 1274 (citing <u>Florida Power & Light</u>, 761 So. 2d at 1092).

36

I do not agree with the Department that, contrary to the requirements of Dusseau, the circuit court here engaged in a reweighing of the record evidence. As I read the circuit court's order, the circuit court properly reviewed the record evidence to determine whether the evidence on which the hearing officer relied was sufficiently credible to constitute competent substantial evidence. As noted, the trial court concluded that the arrest and booking report as well as the testimony of Deputy Sanders "were flatly contradicted by objective evidence on the videotape." That is, the trial court concluded that the arrest and booking report, as well as the trial testimony of the officer, were not sufficiently credible to constitute competent substantial evidence.

In the seminal case of De Groot v. Sheffield, 95 So. 2d 912, 916 (Fla. 1957), the term competent substantial evidence is defined:

> Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. In employing the adjective "competent" to modify the word "substantial," we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and

37

material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the "substantial" evidence should also be "competent."

After the De Groot decision, the Florida Supreme Court further refined the definition of competent substantial evidence by explaining:

Although the terms "substantial evidence" or "competent substantial evidence" have been variously defined, past judicial interpretation indicates that an order which bases an essential finding or **conclusion solely on unreliable evidence should be held insufficient.**

Fla. Rate Conference v. Fla. R.R. & Pub. Utils. Comm'n, 108 So. 2d 601, 607 (Fla. 1959) (emphasis added). In short, evidence which is incredible or unreliable is not competent substantial evidence.

A determination that evidence is not competent substantial evidence does not involve a reweighing of the evidence. As the Florida Supreme Court explained in Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981), the "weight and the sufficiency of evidence are, in theory, two distinct concepts. . . ." As the Supreme Court explained further, "[s]ufficiency is a test of adequacy. Sufficient evidence is 'such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded.'" Id. at 1123 (quoting Black's Law Dictionary 1285 (5th ed. 1979)). In Florida Power & Light, the Florida Supreme Court reiterated

38

that the consideration as to whether a finding is supported by competent substantial evidence necessarily entails a consideration of whether evidence is "legally sufficient." 761 So. 2d at 1092; see Dusseau, 794 So. 2d at 1273-74. In contrast, the "weight of the evidence" is the "balance or preponderance of evidence." Tibbs, 397 So. 2d at 1123 (quoting Black's Law Dictionary 1429 (5th ed. 1979)). That is, it is "a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." Id. (Emphasis added). Here, the circuit court concluded that the "testimonial evidence" of the officer was not credible, and thus, that testimonial evidence was properly rejected. The trial court did not engage in a weighing of credible evidence against other credible evidence. Accordingly, the trial court did not exceed its proper scope of first-tier review.

This understanding of first-tier review was reaffirmed by this court in Department of Highway Safety & Motor Vehicles v. Trimble, 821 So. 2d 1084 (Fla. 1st DCA 2002).[7] In Trimble, the circuit court set aside a driver's license suspension order based upon its determination that no competent substantial evidence supported the hearing officer's decision that Trimble had been given an

_____

[7] On appeal, the Department argues that Trimble conflicts with Dusseau and that Trimble was wrongly decided. I disagree. As explained in the text, Trimble does not conflict with Dusseau. Further, I do not agree that Trimble was wrongly decided.

implied consent warning of her right to refuse a breath, urine or blood test before she declined to take the test. Id. at 1085. On second-tier review, this court concluded that the circuit court had not misapplied the law. We explained that

> [i]n the case before us, the circuit court concluded that the documentary evidence presented by the Department, which was the only evidence submitted to prove its case, **was legally insufficient to constitute CSE** on the warning issue, because the documents were hopelessly in conflict and the discrepancies on the critical facts went unexplained.

Id. at 1086 (emphasis added). This court described the dispositive issue before it:

> The question before us is whether the circuit court's ruling constitutes impermissible reweighing of conflicting evidence, and thus is a misapplication of the law, or whether it is a proper application of the law. **The resolution of this issue turns on the meaning and force of the inference derived from the evidence submitted.**

Id. (emphasis added). This court concluded in Trimble that the circuit court did not engage in a reweighing of evidence, which it was not permitted to do, when it rejected incredible evidence, which it was permitted to do. As we explained, Florida courts have long required that findings must be based "on evidence in the record that supports a reasonable foundation for the conclusion reached." 821 So. 2d at 1087. Put another way, findings must be based on evidence "having fitness to induce conviction." Id. (quoting Fla. Rate Conference v. Fla. R.R. & Pub. Utils. Comm'n, 108 So. 2d 601, 607 (Fla. 1959)).

40

The majority argues <u>Trimble</u> is not applicable as the evidence submitted in that case consisted only of "paper," whereas Deputy Wiggins gave live testimony before the hearing officer. This distinction is of no consequence. The recognition by this court in <u>Trimble</u> that the evidence relied upon by the hearing officer gave equal support to inconsistent inferences had nothing to do with the documentary character of the evidence. This court's refusal in <u>Trimble</u> to grant certiorari relief instead was solely dependent on the evidence being so inclusive as to amount to a "flip of a coin," 821 So. 2d at 1087, as the circuit court therein had properly concluded.

In conclusion, while the majority asserts that the circuit court applied the "wrong law," I must disagree. The circuit court's consideration of whether the hearing officer relied on competent substantial evidence is an inquiry compelled by <u>Dusseau</u> and <u>Trimble</u>. Accordingly, the circuit court applied the correct law in determining whether the administrative findings and judgment were supported by competent substantial evidence. <u>See</u> <u>Haines City Cmty. Dev.</u>, 658 So. 2d at 530, and <u>Educ. Dev. Ctr.,</u> 541 So. 2d at 108. Even the majority recognizes that <u>Dusseau</u> requires a circuit court, on first-tier review, to determine whether a hearing officer's finding is supported by "competent substantial evidence." Majority op. at 7. That is all the circuit court did here. Respectfully, it seems to me that the majority here simply disagrees with the circuit court that the testimony of and

41

report from Deputy Saunders were not competent evidence. That is not, however, the issue before us on second-tier review.[8] In fact, by rejecting the circuit court's conclusion that the hearing officer's findings were not based on competent substantial evidence, it is the majority which is applying the incorrect law.

Accordingly, I would deny the petition for writ

---

[8] As noted, this court, unlike the circuit court, may not review the record on second-tier review to determine whether the Department's decision was supported by competent substantial evidence. Dusseau, 794 So. 2d at 1274 (Fla. 2001). Further, this court cannot grant second-tier certiorari review simply "because it disagrees with the outcome of the circuit court's decision." Nader, 87 So. 3d at 726.